## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BITCO GENERAL INSURANCE CORPORATION,**

        **Plaintiffs,**

vs.

**SUNRISE AGGREGATES LLC and JOHN WARVEL,**

        **Defendants.**

**CASE NO.: 1-21-cv-427**

**HON.**

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Plaintiff BITCO General Insurance Corporation ("BITCO"), for its Complaint against Defendants Sunrise Aggregates LLC ("Sunrise") and John Warvel (collectively, "Defendants"), states as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. BITCO seeks a determination that it has no duty to defend or indemnify Defendants, under a series of Commercial General Liability Policies (CGL) and Commercial Umbrella Policies (CUP), with respect to an underlying lawsuit brought by Diana Russell against Defendants (the "Lawsuit").

2.      The Lawsuit involves Russell's allegations that Sunrise breached a Sand and Gravel Lease Agreement dated May 6, 2002 (the "Lease") between Sunrise and Russell's predecessor-in-interest (her parents).

3.      Russell alleges that Sunrise breached the Lease by failing to make certain minimum payments, failing to perform certain reclamation activities, and other breaches.

4.      Russell also alleges that Sunrise converted extracted minerals, topsoil, trees, and vegetation from the premises that is the subject of the Lease.  Russell also alleges that Sunrise trespassed on to the premises and used the premises without proper authorization.

5.      Finally, Russell's third amended complaint (the latest amendment of her complaint) includes a count alleging that John Warvel, as the sole member of Sunrise, is liable for damages suffered by Russell by reason of certain acts of conversion as alleged in counts four, seven, and nine of the third amended complaint.

**PARTIES**

6.      Plaintiff BITCO is organized under the laws of and domiciled in Illinois, with its principal place of business in Davenport, Iowa.

7.      Defendant Sunrise is a Michigan corporation with its principal place of business located in Dansville, Michigan.

8. Defendant John Warvel is an individual residing in Michigan.

9. There is complete diversity between Plaintiff and all Defendants.

## I. JURISDICTION AND VENUE

10. In this action, BITCO seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, that it has no duty to defend or indemnify Defendants in connection with a claim asserted against them in the underlying Lawsuit.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy exceeds $75,000.

12. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants reside or are domiciled in Ingham County in the Western District of Michigan. Venue is also proper in this District because all or a substantial part of the events or omissions giving rise to this Complaint occurred in Ingham County, Michigan, and because the Policies were issued to an insured that is located within the Western District of Michigan.

## II. THE UNDERLYING LAWSUIT

13. The Lawsuit centers on disputes related to the Lease.

14.     On or about September 28, 2018, Diana Russell's counsel, Douglas J. Austin at Fraser Trebilcock sent correspondence to Sunrise making certain demands and generally outlining areas of dispute between the parties.

15.     Later, on March 5, 2020, Diana Russell filed a complaint against Defendants in the Ingham County Circuit Court for the State of Michigan.  The complaint raised many of the issues raised in the pre-suit demand letter.  Later, Ms. Russell filed a series of amended complaints, with the most recently filed pleading being a third amended complaint dated January 20, 2021.  The matter remains pending before Judge James S. Jamo.

16.     According to the third amended complaint, Russell alleges that Sunrise violated the terms of the Lease.

17.     Russell alleges that the Lease terminated on May 31, 2018.  Russell alleges that during the term of the Lease, Sunrise was authorized to and did mine sand, gravel, and rock from certain portions of the premises leased.

18.     Russell alleges that Defendant was to pay a minimum payment of $15,000 per annum for all sand, gravel, and rock removed pursuant to the terms of the Lease.

19.     Russell alleges that although the Lease terminated on May 31, 2018, Sunrise continued to remove sand, gravel, and rock from the Premises into May, 2019.  Russell alleges that Sunrise improperly used the premises that were the

subject of the Lease to assist in mining activities it conducted on adjoining land with the permission of the adjoining land's owner Roy Harris.

20.     Russell alleges that Defendant removed trees and other vegetation from portions of a buffer strip on the premises in violation of the Lease and a permit.

21.     Russell alleges that Sunrise failed to comply with a permit and a local ordinance, including by failing to timely perform certain required reclamation activities.  Russell alleges that Defendants Sunrise and/or Warvel:

  a. Failed to fully pay the minimum annual payments under the Lease;
  b. Failed to timely complete reclamation activities;
  c. Improperly removed trees and other vegetation;
  d. Improperly converted trees and other vegetation;
  e. Engaged in unauthorized use of the premises that are the subject of the Lease;
  f. Trespassed onto the premises;
  g. Converted extracted minerals;
  h. Improperly removed topsoil; and
  i. Converted topsoil;

22.     Russell's third amended complaint in the underlying Lawsuit asserts liability in separate counts entitled Count One, Breach of Contract Non-Payment, Count Two, Breach of Contract Reclamation, Count Three, Breach of Contract Removal of Frees and Other Vegetation, Count Four, Conversion of Trees and Other Vegetation, Count Five, Unauthorized Use of the Premises Reasonable Rental Value, Count Six, Trespass, Count Seven, Conversion of Extracted

Minerals, Count Eight, Breach of Contract, Removal of Topsoil, Count Nine, Conversion of Topsoil, Count Ten, Claims Against Warvel.

23.     The allegations made against Sunrise and John Warvel in the Lawsuit all are based on intentional, willful acts.  None of the allegations in the Lawsuit allege any accident or unintentional conduct.

24.     Sunrise and John Warvel were served with the Complaint on or about March 13, 2020.  They chose not to tender the Lawsuit to BITCO at that time, but instead filed an Answer and chose to defend the Lawsuit using their own counsel. Sunrise and John Warvel did not notify BITCO of the Lawsuit until March 8, 2021—more than a year after the Lawsuit was first filed and some two and a half years after Russell's counsel sent the September 28, 2018 demand letter to Sunrise.

## V.   THE INSURANCE POLICIES

25.     BITCO issued a series of primary commercial general liability polices to Sunrise with policy periods of one year each from July 21, 2014 through July 31, 2021 with policy numbers as follows (the "Policies"):

- **CLP 3607733B 7-31-14 to 7-31-15**
- **CLP 3624338B 7-31-15 to 7-31-16**
- **CLP 3641541B 7-31-16 to 7-31-17**
- **CLP 3657718B 7-31-17 to 7-31-18**
- **CLP 3671516B 7-31-18 to 7-31-19**
- **CLP 3684498B 7-31-19 to 7-31-20**
- **CLP 3696816B 7-31-20 to 7-31-21**

26. BITCO also issued a series of Commercial Umbrella Policies to Sunrise with policy periods of one year each from July 31, 2014 through July 31, 2021 as follows (the "Umbrella Policies"):

**CUP 2806712B 7-31-14 to 7-31-15**
**CUP 2806791B 7-31-15 to 7-31-16**
**CUP 2806791B 7-31-16 to 7-31-17**
**CUP 2813192B 7-31-17 to 7-31-18**
**CUP 2813249B 7-31-18 to 7-31-19**
**CUP 2816306B 7-31-19 to 7-31-20**
**CUP 2816760B 7-31-20 to 7-31-21**

27. The Policies provide coverage under coverage part A for bodily injury and property damage liability as follows:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

      …

   **b**. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":
      (2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period…

The Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28.     The Policies provide coverage for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance policy applies.

29.     The Policies provide coverage, inter alia, only if the "bodily injury" or "property damage" is caused by an "occurrence".

30.     The Policies also include a number of exclusions that expressly exclude coverage under coverage part A including, without limitation, the following exclusions:

31. **Expected or Intended Injury**
    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*\*\*

**j.**      **Damage to Property**
"Property damage" to:

(1)      Property you own, rent, or occupy, including any costs a expenses incurred  by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)      Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)      Property loaned to you;

.......

(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

**m.**      **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)      A delay a failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The Policy defines "impaired property" as follows:

**8**.      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

9

**b**.     You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by the repair,
replacement, adjustment or removal of "your product" or "your
work" or your fulfilling the terms of the contract or agreement.

32.     The Policies also provide coverage under coverage part B for

"personal and advertising injury":

Coverage Part B provides:

**1.     Insuring Agreement**
a.     We will pay those sums that the insured becomes legally
obligated to pay as damages because of "personal and advertising
injury" to which this insurance applies. We will have the right and
duty to defend the insured against any "suit" seeking those damages.
However, we will have no duty to defend the insured against any
"suit" seeking damages for "personal and advertising injury" to which
this insurance does not apply.  We may, at our discretion, investigate
any offense and settle any claim or "suit" that may result. But:

**b**.     This insurance applies to "personal and advertising injury"
caused by an offense arising out of your business but only if the
offense was committed in the "coverage territory" during the
policy period.

The Policy defines "personal and advertising injury" as:

**14**.     "Personal and advertising injury" means injury, including
consequential "bodily injury", arising out of one a more of the
following offenses:
**a**.     False arrest, detention or imprisonment;
**b**.     Malicious prosecution;
**c**.     The wrongful eviction from, wrongful entry into, or invasion of
the right of private occupancy of a room, dwelling or premises
that a person occupies, committed by or on behalf of its owner,
landlord or lessor;
**d**.     Oral or written publication, in any manner, of material that
slanders or libels a person or organization or disparages a
person's or organization's goods, products or services;

10

  **e**.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f**.  The use of another's advertising idea in your "advertisement";

or

  **g**.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

33.  The Policies also include exclusions that expressly exclude coverage under coverage part B, including, without limitation, the following exclusions:

 **a. Knowing Violation of Rights of Another**
  "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

 **e. Contractual Liability**
  "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

34.  The Policies also expressly provide that the insured(s) must notify BITCO "as soon as practicable" of an "occurrence" or an offense that may result in a claim:

 **2.**  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

 a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  (1) How, when and where the "occurrence" or offense took place;
  (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.      If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.      You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

The Policy also provides that "…[n]o person or organization has a right under this Coverage Part:…to sue us on this Coverage Part unless all of its terms have been fully complied with."

    35.    While the foregoing outlines terms of the Policies, the coverage offered by the Umbrella Policies is similar in scope to the coverage provided by the Policies.

## COUNT I – DECLARATORY RELIEF

    36.    BITCO incorporates by reference all prior allegations as if fully set forth herein.

37.    Sunrise and/or John Warvel provided notice of the Lawsuit to BITCO for the first time on March 8, 2021.

38.    BITCO responded by asking for further information from the insured about the Lawsuit, including a copy of all pleadings that had been filed.  After receiving additional information from Sunrise's attorney, BITCO evaluated whether the claims made in the Lawsuit could possibly implicate any coverage under the Policies and/or the Umbrella Polices.  Based on the information given to BITCO by the insureds and the information otherwise available to BITCO, BITCO found that neither the Policies nor the Umbrella Policies applied to the claims made in the Lawsuit.

39.    BITCO formally expressed its denial of any duty to defend and denial of any coverage in written correspondence dated Monday, May 10, 2021.  The correspondence was delivered to both Sunrise/John Warvel as well as their insurance broker who relayed that the insureds disputed the denial.

40.    John Warvel and Sunrise continue to dispute BITCO's denial.  As such, there exists a definite and concrete, actual case or controversy between the parties, and the parties require judgment to define their legal obligations to each other with.

41.    The allegations made by Russell against Sunrise and/or John Warvel in the Lawsuit do not anywhere allege any "occurrence" as that term is used in the

Policies and the Umbrella Policies.  Therefore, the claims made in the Lawsuit cannot possibly be covered by coverage part A of the Policies (or the Umbrella Policies).

42.     Even if coverage for the Lawsuit was implicated (and it is not), the express exclusions highlighted above would expressly exclude coverage.

43.     The allegations made by Russell against Sunrise and/or John Warvel in the Lawsuit do not anywhere allege a "personal and advertising injury" as that term is used in the Policies and the Umbrella Policies.  Therefore, the claim made in the Lawsuit cannot possibly be covered by coverage part B of the Policies (or the Umbrella Policies).

44.     Even if coverage for the Lawsuit was implicated (and it is not), the express exclusions highlighted above would expressly exclude coverage.

45.     Finally, Sunrise and/or John Warvel first provided notice of the dispute with Russell and first provided notice of the Lawsuit to BITCO on March 8, 2021.  That means that Sunrise and Warvel first provided notice of the dispute to BITCO approximately 2 and ½ years after the September 28 demand letter that Russell's lawyer sent to Sunrise.  And Sunrise and Warvel first provided notice of the Lawsuit slightly more than one year after it was filed (and nearly a year after it was served on Sunrise and Warvel.)

14

46.     This late notice violates the terms of the Policies and the Umbrella Policies.

47.     BITCO has been prejudiced by this late notice because the lateness of the notice has prevented BITCO from being able to exercise its right (pleading in the alternative, and to the extent such right existed) to defend Sunrise and Warvel in the Lawsuit, and to mitigate the expense and potential loss of the Lawsuit.

48.     The late notice also prejudices BITCO because, upon information and belief, there was an opportunity to settle the Lawsuit prior to its filing (but after the September 28, 2018 demand letter) for a nominal amount, or an amount much less than would be required to settle the case after notice of the Lawsuit was belatedly given to BITCO.

49.     In general, the lateness of the notice of the dispute and Lawsuit has prejudiced BITCO by preventing BITCO from effectively defending and/or settling the dispute and/or the Lawsuit.

50.     Pleading in the alternative, to the extent any coverage could possibly have existed under the Policies and/or the Umbrella Policies, the decision by Sunrise and John Warvel not to timely notify BITCO of the dispute and/or the Lawsuit results in a forfeiture of coverage under the Policies and the Umbrella Policies.

51.     Accordingly, BITCO seeks a declaratory judgment by this Court that Sunrise and John Warvel are not afforded coverage under the Policies or the Umbrella Policies with regard to the Lawsuit by reason of the terms of those Policies and Umbrella Policies.

52.     BITCO also seeks a declaratory judgment that does not owe any obligation to defend Sunrise and/or John Warvel in the Lawsuit by reason of the fact that under no circumstances could the claims brought against them in the Lawsuit implicate coverage under either the Policies or the Umbrella Policies.

## PRAYER FOR RELIEF

WHEREFORE, BITCO prays for a declaration from this Honorable Court that Sunrise and/or John Warvel are not afforded coverage under the Policies or the Umbrella Policies in connection with the Lawsuit and BITCO does not have a duty to defend and indemnify Sunrise and/or John Warvel in connection with the Lawsuit, and for such other relief as this Honorable Court deems necessary, just, and proper in connection with the enforcement of the rights herein.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: May 21, 2021 By: */s/ Robert E. Graziani*
Robert E. Graziani (P25547)
Michael J. Sheehan (P58585)
450 W. Fourth Street
Royal Oak, MI 48067
Phone: (248) 645-1483
Email: msheehan@howardandhoward.com

*Attorneys for Plaintiff*

17